---

In re HALE.

(District Court, D. New Mexico. May 5, 1913.)

No. 39.

1. BANKRUPTCY (§ 408*)—DISCHARGE—FALSE OATH.

Bankr. Act July 1, 1898, c. 541, 30 Stat. 550 (U. S. Comp. St. 1901, p. 3427) § 14b, precludes a discharge in case the bankrupt has committed an offense punishable by imprisonment as therein provided, and section 29b (2) provides for the punishment of a bankrupt by imprisonment when he has made a false oath or account in, or in relation to, any proceeding in bankruptcy. Held, that a false oath made by a bankrupt, to prevent a discharge, must have been knowingly and fraudulently made, and will be so considered when he states matters which he does not believe to be true, willfully and contrary to his oath.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 732–736, 759, 762, 763; Dec. Dig. § 408.*]

**2.** BANKRUPTCY (§ 408*)—DISCHARGE—FALSE OATH.

An objection was filed to a bankrupt's discharge **on the ground that he** had made a false oath that he had no real estate, when in fact he held the legal title to certain real estate according to the records. The land in question was bought with funds derived from property the legal title to which was vested in the bankrupt's wife during her lifetime, and was located in Missouri and Texas, under the laws of which the wife's property on her death descended to the children, subject to a life estate in the husband, at least to the extent of one-third of the property. *Held,* that the bankrupt was charged with knowledge of his interest in the property, and that his oath that he owned no interest therein was willfully false and sufficient to prevent a discharge.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 732–736, 759, 762, 763; Dec. Dig. § 408.*]

In Bankruptcy. In the matter of bankruptcy proceedings of Josiah Hale. Application for discharge denied.

Spiess, Davis & Ilfeld, of East Las Vegas, N. M., for bankrupt.

Jones & Rogers, of East Las Vegas, N. M., for objecting creditor.

POPE, District Judge. This cause is pending before the court upon objections to the discharge of the bankrupt. These objections proceed upon three grounds. Objection numbered 3, in the present state of the record, is without evidence to support it; and as to objection numbered 1, counsel for objecting creditor has, with commendable frankness, expressed his doubt, which we find well founded, as to whether it is possessed of merit. This leaves the case pending upon objection numbered 2, which is that the bankrupt made a false oath in swearing in his schedules that he had no property or assets. Stating the matter more specifically, the alleged false oath consists in the oath of the bankrupt that he had no real estate, and that the interest in certain real estate in Mora county, as to which, according to the records, bankrupt held the legal title, was really in the bankrupt as trustee for his children, and that, as to such, bankrupt "claims no right, title, or interest therein or thereto, excepting as such trustee."

[1] The question is whether this was a false oath such as, under Bankr. Act, § 29b, in connection with section 14b (1), precludes his discharge. The last section provides that, in effect, there should be no discharge where the bankrupt has "committed an offense punishable by imprisonment as therein provided," and section 29b (2) provides for the punishment of the bankrupt by imprisonment where he has made "a false oath or account in, or in relation to, any proceeding in bankruptcy." Of course, the intent is a material element in such a matter. The false oath must have been knowingly and fraudulently made, and an oath may be considered to have been so made when made by a person who states matters which he does not believe to be true, willfully and contrary to his oath. Wechsler v. United States (C. C. A. 2d Cir.) 158 Fed. 579, 86 C. C. A. 37. Was the oath of the bankrupt here made that he had no real estate a false oath within the definition just given?

[2] It is shown that the real estate in question was bought with funds derived from property the legal title to which was vested in

the bankrupt's wife during her lifetime. This property was located in the states of Missouri and Texas. Under the laws of these states, so far as we can ascertain them, the property of the wife upon her death descended to the children, subject to a life estate in the husband, at least to the extent of one-third of the real estate. Notwithstanding this state of the law, the bankrupt swore that he had no interest in this real estate. He is presumed to have known the law, and there is no explanation afforded by his testimony as to why, contrary to the legal status of the matter, he made oath that he had no interest in this real property. Had he testified to advice of counsel upon the subject, or any other reasons leading to the belief that his oath upon this point was the result of mistake or improper advice, the case would have been brought within the rule laid down by this court in its opinion in other cases. In the absence of such explanation, it must be presumed that the affiant knowingly took oath that he had no interest in the real estate when charged by law with knowledge of such interest.

There are other reasons leading to the view that bankrupt believed he had an interest, but failed to disclose it. His own earnings, according to the record, largely contributed to the purchase of the property held by his wife at the time of her death. He seems to have pursued the course of delivering to her any surplus of his salary for investment, and her holdings, the proceeds of which went into this Mora county property, were the result of his own earnings. Not only legally, but as a matter of equity, he was interested in the property held by his wife, and it must be assumed that he had this in mind. In addition, during a long course of years he administered the property held by descent from his wife, in many instances held it out as his own, and otherwise demonstrating a claim of more than a naked legal title thereto. True, he claims that he was during all this period acting merely as trustee for his children; but such an attitude to the matter impresses me as unnatural, and as not in accordance with what he believed to be the facts. I am constrained to the view that he had an interest in this Mora county real estate, that he believed at all times that he had such interest, and that his oath to the effect that he had no such interest was made knowingly, and with the purpose of withholding from his creditors the knowledge of his affairs to which they were entitled under the Bankruptcy Act. In re Breiner (D. C.) 129 Fed. 155, is illustrative of the legal principles upon which this conclusion is reached.

The discharge prayed for will accordingly be denied.